COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Frank and Humphreys
Argued at Chesapeake, Virginia


DAMON PHINEAS JORDAN

                                                              OPINION BY
v.      Record No. 0307-11-1                  JUDGE ROBERT J. HUMPHREYS
                                                            AUGUST 28, 2012

COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                                  Stephen C. Mahan, Judge

            Anton A. Karpov, Assistant Public Defender (Office of the Public
            Defender, on brief), for appellant.

            John W. Blanton, Assistant Attorney General (Kenneth T.
            Cuccinelli, II, Attorney General; Office of the Attorney General,
            on brief), for appellee.


        Damon Phineas Jordan (Jordan) challenges his conviction following a jury trial for

possession of a firearm by a convicted felon in violation of Code § 18.2-308.2.[1]  Jordan argues

the evidence is insufficient to support a finding that the instrument he possessed was a "firearm"

within the meaning of Code § 18.2-308.2.  Because the evidence is sufficient to support Jordan's

conviction for possession of a firearm by a convicted felon, we affirm the judgment of the trial

court.

---

        [1] Appellant's convictions of carjacking, use of a firearm in the commission of a felony,
and eluding police are not before us on this appeal.

I.

BACKGROUND

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)). So viewed, the evidence establishes that on the evening of June 28, 2009, thirteen-year-old Matthew Arrowood drove his father to a 7-Eleven and parked in front of the store. His father exited the vehicle and entered the store, at which time Jordan approached the driver's side window of the truck and began asking Arrowood questions. When Arrowood refused to respond, Jordan pointed an object appearing to be a firearm at Arrowood's temple, ordered Arrowood out of the truck, entered the vehicle, and drove away. Arrowood gave the police a description of Jordan and identified him as the assailant when the police arrested him. When the police apprehended Jordan, they did not recover a firearm or any object resembling a firearm.

At Jordan's trial, Arrowood testified that the incident lasted between thirty to sixty seconds, Jordan was six inches to a foot away, and Arrowood had five seconds to look at the gun through the mirror as Jordan approached. Arrowood testified as follows on direct examination:

> [Arrowood:] [Jordan] pointed a gun at me and told me to get out of the truck.
>
> [Commonwealth:] Could you describe the gun that he pointed at you?
>
> [Arrowood:] Like a small pistol. It was silver.

Arrowood also testified on direct and redirect examination that he was familiar with guns and had fired handguns before and that the instrument Jordan pointed at his head looked to him like a "semi-automatic pistol," possibly a "Raven." After Jordan pointed the gun at Arrowood's head,

he said, "Get out of the truck." Arrowood acknowledged that he exited the truck and fled because Jordan was pointing a "Raven semiautomatic" pistol at him. When asked by the Commonwealth on redirect examination whether the instrument "look[ed] like a toy gun," Arrowood responded, "A really detailed toy gun if it was."

The Commonwealth entered into evidence without objection a certified copy of a prior felony conviction for Jordan. Jordan moved to strike the evidence on the firearm charge, which motion the trial court denied. At the conclusion of all the evidence, the jury found Jordan guilty of possession of a firearm by a convicted felon. This appeal follows.

II.

ANALYSIS

"When considering a challenge to the sufficiency of the evidence to sustain a conviction, [an appellate court] reviews 'the evidence in the light most favorable to the prevailing party at trial and consider[s] all inferences fairly deducible from that evidence.'" Clark v. Commonwealth, 279 Va. 636, 640, 691 S.E.2d 786, 788 (2010) (quoting Jones v. Commonwealth, 276 Va. 121, 124, 661 S.E.2d 412, 414 (2008)). Where there is a conflict in the evidence, this standard of review requires us to resolve that conflict in favor of the Commonwealth, Rodgers v. Commonwealth, 227 Va. 605, 614, 318 S.E.2d 298, 303 (1984), and we "will not set aside the factual findings of the trial court unless those findings are 'plainly wrong or without supporting evidence,'" Williams v. Commonwealth, 52 Va. App. 194, 197, 662 S.E.2d 627, 628-29 (2008) (quoting Foster v. Commonwealth, 38 Va. App. 549, 554, 567 S.E.2d 547, 549 (2002)). Further, the jury, "who has the opportunity to see and hear the witnesses, has the sole responsibility to determine their credibility, the weight to be given their testimony, and the inferences to be drawn from proven facts." Commonwealth v. Taylor, 256 Va. 514, 518, 506 S.E.2d 312, 314 (1998).

Code § 18.2-308.2(A) prohibits a convicted felon from "knowingly and intentionally possess[ing] or transport[ing] any firearm or ammunition for a firearm." For the purposes of Code § 18.2-308.2, a firearm must be "an instrument which was designed, made, and intended to expel a projectile by means of an explosion." Armstrong v. Commonwealth, 263 Va. 573, 584, 562 S.E.2d 139, 145 (2002). "It is not necessary that the Commonwealth prove the instrument was 'operable,' 'capable' of being fired, or had the 'actual capacity to do serious harm.'" Id.

Taking the evidence in the light most favorable to the Commonwealth, the fact found by the jury is that what Jordan pointed at Arrowood was a firearm as defined by Armstrong and this fact is supported by evidence in the record. The jury was properly instructed on the law and obviously credited Arrowood's testimony that supports the fact that what Jordan possessed and used in a carjacking was a firearm.

Furthermore, Arrowood's testimony that he was familiar with firearms and recognized the object Jordan possessed as such is not the only evidence that what Jordan displayed was a firearm designed to expel a projectile. This Court reviews "the totality of the evidence to determine whether it was sufficient to prove an offense." Bowling v. Commonwealth, 51 Va. App. 102, 107, 654 S.E.2d 354, 356 (2007). Arrowood's testimony describing the gun in some detail was corroborated by, and must be coupled with, Jordan's actions in pointing it at Arrowood's head while concurrently demanding that he get out of the truck. The jury could have fairly drawn an entirely reasonable inference from this evidence that the object Jordan held that appeared to be a firearm functioned as such. See Sullivan v. Commonwealth, 280 Va. 672, 676, 701 S.E.2d 61, 63-64 (2010) (An appellate court's deference to the fact-finder "applies not only to findings of fact, but also to any reasonable and justified inferences the fact-finder may have drawn from the facts proved.").

In Redd v. Commonwealth, 29 Va. App. 256, 259, 511 S.E.2d 436, 438 (1999), the defendant's implied assertion that the object functioned as a weapon corroborated the victim's description that the object was a gun and this evidence was sufficient to support a conviction for possession of a firearm by a convicted felon. In Redd, the appellant entered a convenience store, placed a "long black gun" on the counter, and ordered the clerk to give her all the money from the register. Id. at 258, 511 S.E.2d at 437. Redd added that she would kill the clerk if she set off the alarm and told her not to call the police. Id. The clerk's only testimony about the instrument displayed was, "'I just know it was a long black gun. I am not familiar with guns.'" Id. There is no substantial difference between the evidence found sufficient in Redd and that reflected in this record. While Redd involved the appellant's express statement that she would kill the victim if she set off the alarm, id., Redd does not stand for the proposition that evidence that an object is an operable firearm cannot be established by the totality of the evidence, including circumstantial evidence.

The issue before us is whether what Jordan, concededly a convicted felon, "possessed" was, in fact, a firearm designed to operate as such, and the manner of "display" in this case is highly probative on that point. Jordan did not casually wave the instrument around in the air without purpose, but rather pointed it directly at Arrowood's head and concurrently demanded that he part with possession of the vehicle. Even without actually saying the words, "or I will shoot you," a reasonable fact-finder could have certainly concluded that Jordan's words and actions implied as much and that what he pointed at Arrowood was a firearm and not a replica or a toy as suggested by the dissent. The totality of the evidence in the light most favorable to the Commonwealth as the party that prevailed below is that what Arrowood recognized as a "small," "silver," "semi-automatic pistol," "possibly a Raven" was pointed at his temple and when coupled with Jordan's words and actions supported Arrowood's conclusion that a gun and not a

toy was pointed at his head.  These facts provide ample evidence to support the jury's verdict.

We hold that the evidence was sufficient for the jury to conclude that the object Jordan displayed

was intended to expel a projectile by means of an explosion, and we affirm the judgment in this

case.

<u>Affirmed.</u>

Elder, J., dissenting.

The majority holds Jordan's act of pointing an object appearing to be a firearm at Matthew Arrowood's head is sufficient evidence to support the jury's finding that the object "was designed, made, and intended to expel a projectile by means of explosion." Armstrong v. Commonwealth, 263 Va. 573, 584, 562 S.E.2d 139, 145 (2002). Because I believe this ruling effectively nullifies the distinction the Supreme Court has drawn between the definition of a firearm under Code § 18.2-53.1 (which prohibits the use or display of a firearm in the commission of certain specific felonies) and the definition of a firearm under Code § 18.2-308.2 (which prohibits convicted felons from "knowingly and intentionally possess[ing] or transport[ing] any firearm or ammunition for a firearm"), I respectfully dissent.

"[I]n order to sustain a conviction for possessing a firearm in violation of Code § 18.2-308.2, the evidence need show only that a person subject to the provisions of that statute possessed an instrument which was designed, made, and intended to expel a projectile by means of an explosion." Armstrong, 263 Va. at 584, 562 S.E.2d at 145. This differs from the definition of a "firearm" for purposes of Code § 18.2-53.1. As the Supreme Court has explained, "[t]he purpose of Code § 18.2-53.1 . . . is to deter violent criminal conduct." Holloman v. Commonwealth, 221 Va. 196, 198, 269 S.E.2d 356, 358 (1980). That Code section "not only is aimed at preventing actual physical injury or death but also is designed to discourage criminal conduct that produces *fear* of physical harm." Id. (emphasis added). A victim can be put in fear of physical harm "just as readily from employment of an instrument that gives the appearance of having a firing capability as from use of a weapon that actually has the capacity to shoot a projectile." Id. Thus, a "firearm" for purposes of Code § 18.2-53.1 includes "an instrument which [gives] the *appearance* of having a firing capability, whether or not the object actually ha[s] the capacity to propel a bullet by the force of gunpowder." Id. at 199, 269 S.E.2d at 358

- 7 -

(emphasis added); see Thomas v. Commonwealth, 25 Va. App. 681, 687, 492 S.E.2d 460, 463 (1997) (holding that the BB pistol used by the defendant to commit a robbery was a "firearm" under Code § 18.2-53.1 because the evidence supported the conclusion that it was an instrument that gave the appearance of having a firing capability and not merely a "toy pistol"). "Code § 18.2-53.1 encompasses a broader definition" of a firearm to "include[] any instrument that 'gives the appearance of being a firearm.'" Startin v. Commonwealth, 281 Va. 374, 382, 706 S.E.2d 873, 878 (2011) (quoting Armstrong, 263 Va. at 582, 562 S.E.2d at 144).

By contrast, "[t]he definition is more narrowly construed under the possession statute, Code § 18.2-308.2." Id. at 381, 706 S.E.2d at 878. A firearm for purposes of Code § 18.2-308.2 must be "an instrument which was designed, made, and intended to expel a projectile by means of an explosion." Armstrong, 263 Va. at 584, 562 S.E.2d at 145. Indeed, "the conduct proscribed by Code § 18.2-308.2, being a felon in possession of a firearm, focuses on the General Assembly's determination that certain individuals - felons - are unfit to possess firearms, even for lawful purposes." Id. at 582, 562 S.E.2d at 144. "[T]he legislative intent underlying Code § 18.2-308.2 is not directed toward proscribing 'criminal conduct that produces fear of physical harm' to an individual victim." Id. at 582-83, 562 S.E.2d at 144 (quoting Holloman, 221 Va. at 198, 269 S.E.2d at 358).

With these principles in mind, I believe the majority places too much emphasis on Arrowood's testimony describing the instrument Jordan used while ordering him out of the vehicle. Although Arrowood was able to identify the model of the "firearm" and gave a detailed description of the instrument, no other account of this object exists in the record. Therefore, the record contains, at most, evidence that the object used during the commission of the crimes *appeared* to have firing capability. As the Supreme Court has made very clear, Code § 18.2-308.2 "has no element of perception by a victim that would warrant applying the same

broad construction to the term 'firearm' in that statute as is applicable to the same term in Code § 18.2-53.1." Id. at 583, 562 S.E.2d at 144. By focusing on Arrowood's detailed observation of the instrument, the majority ignores the reasonable hypothesis that Jordan used a replica that lacked the capability to expel a projectile.[2]

In addition, the majority looks to Jordan's "manner of 'display'" of the object as "highly probative" evidence that the instrument in Jordan's possession had the capability to expel a projectile by means of an explosion. I concur that in some circumstances, the record can sufficiently support a conviction under Code § 18.2-308.2 if additional circumstantial evidence corroborates an eyewitness description of an instrument as an object appearing to be designed, made, and intended to expel a projectile by means of an explosion. See Taylor v. Commonwealth, 33 Va. App. 735, 737, 536 S.E.2d 922, 922-23 (2000) (relying on

_____

[2] In Startin, the defendant displayed a "replica [that] ha[d] the same size, weight and shape of an operational firearm designed to expel .45 caliber ammunition by explosion" during the commission of a robbery. 281 Va. at 377, 706 S.E.2d at 876. Although the replica was sufficient to support the defendant's conviction under Code § 18.2-53.1, the Supreme Court noted that "the replica at issue here . . . would be [in]sufficient to convict a person under Code § 18.2-308.2 for possession of a firearm by a convicted felon because [it was] not 'designed, made, and intended to fire or expel a projectile by means of an explosion.'" Id. at 382, 706 S.E.2d at 878 (quoting Armstrong, 263 Va. at 583, 562 S.E.2d at 145).

Similarly in Copeland v. Commonwealth, 52 Va. App. 529, 664 S.E.2d 528 (2008), the defendant was convicted under Code § 18.2-308.2(A). However, a certificate of analysis was issued after the defendant's conviction became final that proved beyond a doubt that the instrument did not meet the definition of a "firearm" under that subsection because it was not designed, made, and intended to expel a projectile by means of an explosion. Id. at 531, 664 S.E.2d at 529. We therefore granted the defendant's petition for writ of actual innocence and vacated his conviction.

The common thread between these two cases underscores my qualm with the majority's holding. No matter how certain the outward description of the instrument, the Commonwealth must still provide additional evidence that supports a finding that the instrument was in fact designed, made, and intended to expel a projectile by means of an explosion. The fact that an object appearing to be a firearm is brandished to effectuate a robbery does not exclude the reasonable hypothesis that the object was not designed and made as an operable firearm. Accord Lynn Considine Cobb, Annotation, Robbery by Means of Toy or Simulated Gun or Pistol, 81 A.L.R. 3d 1006 (2012).

circumstantial evidence to "prove whether a particular firearm functions" in the context of possession of a firearm while in possession of certain contraband in violation of Code § 18.2-308.4). Such circumstantial evidence may include "the trial court's examination of the gun, ammunition magazine, and bullets at trial," Jones v. Commonwealth, 277 Va. 171, 182, 670 S.E.2d 727, 734 (2009); the observations of the officers who seized the firearm and determined that it was loaded, see id. at 175, 670 S.E.2d at 729; and the defendant's "implied assertion that the object was a functioning weapon," Redd v. Commonwealth, 29 Va. App. 256, 259, 511 S.E.2d 436, 438 (1999).

In Redd, the defendant, a previously convicted felon, entered a convenience store and placed a "long, black gun" on the counter. 29 Va. App. at 258, 511 S.E.2d at 437. She ordered the store clerk to give her all the money from the register and warned the clerk that she "would kill her if she set off the silent alarm." Id. We held that the testimony of a victim that a convicted felon brandished a firearm is insufficient, standing alone, to support a conviction for violating Code § 18.2-308.2. However, we also held that the defendant's threat to kill the clerk constituted an implied assertion that the object was a functioning weapon in the absence of evidence to the contrary. Id. at 259, 511 S.E.2d at 438.

Similarly in Taylor, the defendant was conversing with an undercover police officer while conducting a drug transaction. During the transaction, the defendant told the officer about a state trooper having stopped him when he was "dirty" and "had a couple of thousands [sic] of dollars . . . [and] a 38 in his pocket." Taylor, 33 Va. App. at 737, 536 S.E.2d at 922. As the defendant mentioned the .38, he raised his shirt, and the undercover officer saw the "silver part of what appeared to be a firearm" tucked in his waistband. Id. We held that "[g]iven the context of the events, a reasonable person could infer the gun was real" because "[i]t would be unreasonable to conclude in this situation the defendant talked about, carried, and displayed

something that looked like a gun but could not function as one."[3] Id. at 738-39, 536 S.E.2d at 923.

The majority extends Redd and Taylor to hold that the act of displaying an apparent firearm constitutes an "implied assertion" sufficient to prove that the object was "an instrument . . . designed, made, and intended to expel a projectile by means of an explosion." Armstrong, 263 Va. at 584, 562 S.E.2d at 145. What the majority fails to consider is that pointing an object at a victim in a threatening manner may be intended solely to instill fear in a victim just as much as it is an expression of the object's operability as a firearm. Unlike the defendant in Redd, Jordan made no direct threat to harm or kill Arrowood if he failed to comply with Jordan's demand to get out of the vehicle.[4] And unlike the defendant in Taylor, Jordan did not make additional statements or engage in additional actions implying that his apparent firearm functioned as one. I believe the majority makes the logical progression that pointing an object directly at a victim's head has the same effect as saying the words, "or I will shoot you," but it is a step too far. The evidence does not exclude the reasonable hypothesis of innocence that Jordan merely brandished an object *appearing* to be a functioning weapon. It is axiomatic that when the Commonwealth relies on circumstantial evidence, "all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence." Cordon v. Commonwealth, 280 Va. 691, 694, 701 S.E.2d 803, 805 (2010).

---

[3] The link between drug transactions and firearms is well recognized. See, e.g., Bolden v. Commonwealth, 275 Va. 144, 654 S.E.2d 584 (2008); McCain v. Commonwealth, 261 Va. 483, 545 S.E.2d 541 (2001); Scott v. Commonwealth, 55 Va. App. 166, 684 S.E.2d 833 (2009).

[4] I recognize that the Supreme Court in Armstrong did not overrule our decision in Redd, and, thus, that Redd remains binding precedent. However, when viewed in light of the Supreme Court's discussion of the differing policy objectives of Code §§ 18.2-53.1 and 18.2-308.2, I believe Redd defines the outer limit of what kind of circumstantial evidence is sufficient to support a finding that the object used was a "firearm" under Code § 18.2-308.2.

The majority's holding that the testimony in this case is sufficient to prove the object in Jordan's possession during the carjacking was designed to expel a projectile for purposes of Code § 18.2-308.2 effectively nullifies the distinction the Supreme Court has drawn between the definition of a firearm under Code § 18.2-53.1 and the definition of a firearm under Code § 18.2-308.2. Evidence that demonstrates merely that an object appeared to observers to be an operable firearm shows nothing more than that the object meets the broad definition of a firearm under Code § 18.2-53.1. Consequently, I believe the evidence fails to show that the object meets the narrower definition of a firearm under Code § 18.2-308.2.